```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 08-60471-Civ-MARRA
                                          (03-60078-Cr-MARRA)
                                    MAGISTRATE JUDGE P. A. WHITE
JORGE APARICIO,              :

       Movant,               :

v.                           :      REPORT OF MAGISTRATE
                                    JUDGE RECOMMENDING
UNITED STATES OF AMERICA,    :      THAT MOTION BE GRANTED
                                    FOLLOWING AN EVIDENTIARY HEARING
       Respondent.           :
_____
```

Introduction

This matter is before the Court on the movant, Jorge Aparicio's ("Aparicio") motion to vacate, attacking his conviction and sentence for conspiracy to commit money laundering entered on a guilty plea in case no. 03-60078-Cr-Marra.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

This Court has reviewed the motion (Cv-DE#1), the government's response (Cv-DE#6), the movant's reply (Cv-DE#9), the PSI, and the underlying criminal file.

Construing Aparicio's assertions liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), he appears to raise the following claims:

            1.    He was denied effective assistance of

       counsel, where his lawyer failed to file a requested direct appeal. (Cv-DE#1:5).

2. His counsel was operating under an actual conflict of interest. (Cv-DE#1:6).

3. He was denied effective assistance of counsel, where his lawyer misadvised him regarding his sentence exposure. (Cv-DE#1:7-8).

4. He was denied effective assistance of counsel, during pretrial and plea proceedings. (Cv-DE#1:9).

After review of the record, it became apparent that an evidentiary hearing was necessary at least with regard to claim one, as listed above. Ruben Garcia, Esquire was appointed to represent Aparicio, and an evidentiary hearing held on May 7, 2009.

## Factual and Procedural History

For an appreciation of this case and the claims raised herein, a brief factual and procedural history of the underlying criminal case is required. The stipulated facts reveal that beginning in October 2000 and continuing until July 2003, Aparicio became involved in a money laundering organization, which conducted and attempted to conduct financial transactions, by contacting an intermediary money broker that had bulk dollars to sell in the United States. Aparicio was aware that the funds represented the proceeds of unlawful activity, to-wit: the manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance. Aparicio was also cognizant that the organization's activity was designed in whole or in part to disguise the nature, location, source, ownership, and control of the proceeds of the funds. He acted as a conduit or intermediary between a DEA undercover agent or informant and money couriers or brokers, in at least fourteen bulk cash pickups, two of which

2

resulted in seizures by law enforcement, in an amount totaling at least $1.7 million dollars. Generally, Aparicio would contact an intermediary money broker, advising him that he had bulk dollars to sell in the United States. The intermediary would in turn contact either a DEA undercover agent or DEA informant to advise that a certain amount of bulk cash was ready to be picked up in a number of cities, including New York, Miami, and Chicago.

Procedurally, on September 9, 2003, Aparicio was charged by Second Superseding Indictment with conspiracy to commit money laundering, as well as, substantive counts of money laundering. (Cr-DE#152).

On January 5, 2007, he entered into a written plea agreement wherein he agreed to plead guilty to conspiracy to commit money laundering. (Cr-DE#961). In exchange, the government agreed to dismiss all remaining charges after sentencing. (Id.). Aparicio acknowledged that the court could impose a statutory maximum term of up to 20 years in prison. He also understood that the sentence would be imposed after the court considered the advisory guidelines, based in part on a PSI, which would be prepared after the plea is entered. Aparicio acknowledged that the court was not bound to impose a guideline sentence, and was permitted to tailor the sentence in light of other statutory concerns, which may be more or less severe than the guidelines. Aparicio likewise acknowledged that he could not withdraw his plea solely as a result of the sentence imposed. Moreover, Aparicio agreed to waive his right to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure from the guideline range the court established at sentencing. In exchange, the government agreed to recommend that Aparicio's base offense level be reduced up to three levels based on his timely acceptance of responsibility.

3

Both parties agreed, although not binding on the probation officer or the court, to recommend: (1) the relevant amount of funds laundered was more than $1 million, but less than $2.5 million dollars; (2) a 6-level increase to the offense level was warranted because the laundered funds were the proceeds of an offense involving manufacture, importation or distribution of a controlled substance; (3) a 2-level increase was also warranted because the offense involved a violation of 18 U.S.C. §1956; (4) 2-levels would also be added to the base offense level because the offense involved sophisticated laundering; (5) that neither an upward nor downward departure based on Aparicio's role in the offense was warranted; and, (6) the adjusted base offense level should be a level 31, with a corresponding criminal history category I.

On March 28, 2007, Aparicio appeared for sentencing. At that time, he was sentenced to the low end of the applicable guideline range to a term of 108 months in prison, followed by 2 years supervised release. (Cr-DE#980). The judgment was entered by the Clerk on March 29, 2007. ( Id.). No direct appeal was filed. The judgment of conviction in the underlying criminal case became final at the latest on April 12, 2007, ten days after the entry of judgment, when time expired for filing a notice of appeal.[1]

At the latest, Aparicio was required to file this motion to vacate within one year from the time the judgment became final, or no later than April 12, 2008. See Griffith v. Kentucky, 479 U.S.

---

[1] Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). On December 1, 2002, Fed.R.App.P. 26 which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

314, 321, n.6 (1986). This motion to vacate was timely filed by Aparicio on March 27, 2008, when he signed and turned it over to prison officials for mailing.[2] (Cv-DE#1).

## Evidentiary Hearing Claim

In **claim one,** Aparicio asserts that his lawyer failed to file a requested direct appeal. The claim was not conclusively refuted by the record, and warranted further evidentiary findings. At the May 7, 2009 evidentiary hearing, testimony was taken from Aparicio, and his criminal defense counsel, Victor Rocha, Esquire.

It is clear that a counsel's failure to file a direct appeal after being <u>requested</u> to do so by his client results in a <u>per se</u> constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable").

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." <u>Roe v. Flores-Ortega</u>, <u>supra</u> at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. <u>Id</u>.; <u>see</u>

---

[2] <u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

also, McElroy v. United States, 2007 WL 4393955, *1 (11th Cir. 2007); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

Even if the defendant contractually waived the right to appeal, counsel may be ineffective for not filing a notice of appeal when directed to by the defendant because the merits of an appeal are not to be considered when determining whether an out-of-time appeal should be permitted. Gaston v. United States, 237 Fed.Appx. 495, 497 (11th Cir. 2007). Likewise, the defendant need not show that there were viable grounds for such an appeal. Martin v. United States, 81 F.3d 1083 (11 Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11 Cir. 1995); Restrepo v. Kelly, 178 F.3d 634, 641-42 (2d Cir. 1999)(holding that a habeas petitioner alleging ineffective assistance of counsel based on counsel's failure to file a requested notice of appeal need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief). Prejudice is presumed when counsel fails to file a notice of appeal when requested to do so by a client. Gaston v. United States, 237 Fed.Appx. at 496, citing, Flores-Ortega, 528 U.S. at 483.

In the case of an appeal following a guilty plea, however, the defendant is entitled to an out-of-time appeal of sentencing issues only. Id. Only sentencing claims may be raised on an out-of-time appeal following a plea because "the few grounds upon which the guilty plea may be challenged are not limited to direct appellate review, but instead are more appropriately raised in §2255 proceedings." Montemoino at 417.

Although there was a limited appeal waiver in this case, the Eleventh Circuit has clarified that counsel must still file a

6

notice of appeal if directed to do so by his client, unless the movant has waived <u>all</u> of his appellate rights. See, <u>Gomez-Diaz v. United States</u>, 433 F.3d 788 (11 Cir 2005). Specifically, the Eleventh Circuit held that the general rule that an attorney who disregards instructions from his client to appeal acts in a manner that is *per se* professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights. <u>Id</u>. at 794.

At the evidentiary hearing in this case, Aparicio was unequivocal that he requested that Attorney Rocha file a notice of appeal in his case. Specifically, Aparicio explained that, although he pled guilty pursuant to a negotiated plea agreement, he was nevertheless unhappy with the length of his sentence, and felt there were many appealable issues.[3] In fact, he believed that of all the codefendants in the case, which were over 28, his sentence was the most severe, despite his role as a minor participant. Aparicio was forthright in his testimony that immediately after sentence was imposed, and while he remained in the courtroom, he had a brief conversation with counsel during which he instructed counsel to file a direct appeal. Aparicio explained that when he returned to the local detention center, he attempted to call counsel every day during the 10-day appeal period, however, counsel never answered his calls. According to Aparicio, on one occasion during this period, he phoned counsel's office, and after the secretary accepted his collect call, he asked her to convey to counsel that he wanted a direct appeal filed.

Moreover, when counsel never responded regarding the status of

---

[3] Although he recalled that, as part of the written plea agreement, he agreed to a sentence of 108 months in prison, Aparicio candidly believed that the court, in its discretion, could nevertheless have disagreed with the agreed upon sentence, and fashioned a sentence below the 108 months.

filing the appeal notice, Aparicio contacted his wife and asked her to contact counsel in order to insure that the appeal was filed. According to Aparicio, when his wife was also unable to speak with counsel, she sent counsel an e-mail on Wednesday, April 11, 2007, before expiration of the appeal period. A copy of the e-mail and counsel's response thereto was introduced into evidence, without objection. In that e-mail, Aparicio's wife advised counsel, in pertinent part, that her husband needed to speak with him personally to address various issues before the appeal period expired. That same day, counsel responded to the e-mail, advising Aparicio's wife that she needed to inform her husband that there was nothing to appeal. Aparicio, however, was unequivocal that at all times he wanted to file an appeal and expressed his desires to counsel in that regard.

Aparicio also testified that, after this brief visit with counsel in the courtroom, he never spoke with counsel again until approximately two months ago, when he was transferred to the location detention center for the evidentiary hearing in this case, and was surprised when counsel showed up to visit him. Aparicio testified that counsel learned from a fellow inmate that Aparicio had been transferred and was seeking to appeal his conviction. However, it was Aparicio's impression that counsel was acting during the meeting as if he had no idea that Aparicio was seeking an appeal. Instead, counsel proceeded to explain that, despite his repeated efforts, he was unable to get Aparicio's sentence reduced based on substantial assistance because the information Aparicio had provided to the government was of no value.

Regarding Aparicio's appellate rights, Attorney Victor Rocha testified that immediately after sentence was imposed, he did have a conversation with the movant regarding the filing of an appeal.

Counsel testified that he explained to the movant that there were no grounds for an appeal as Aparicio had received a low end guideline sentence. Attorney Rocha, however, offered equivocal testimony regarding whether or not Aparicio instructed him to file an appeal despite this advice. At first, counsel testified that he could not recall whether Aparicio instructed him to file the appeal. Later, Attorney Rocha appeared to contradict himself by testifying that Aparicio never instructed him to file an appeal. According to counsel, Aparicio instead agreed with his advice that there were no grounds for an appeal, and therefore, one would not be pursued.

Attorney Rocha also testified at first that he could not recall speaking with Aparicio's wife during the 10-day appeal period regarding pursuing an appeal, but claims to have had numerous conversations with her thereafter where the issue of an appeal was never raised. During cross-examination, however, he conceded receiving the April 11, 2007 e-mail from Aparicio's wife regarding an appeal, and writing the response thereto, indicating that there were no issues to appeal.

In this case, it is undisputed that counsel consulted with Aparicio immediately after sentencing about an appeal. However, the issue is whether Aparicio nevertheless indicated at the conclusion of this meeting and thereafter that he nevertheless wanted to pursue a direct appeal.

After careful consideration of the testimony of the movant, Aparicio, in the context of this case and close observation of his demeanor, as well as careful attention to and review of the testimony of defense counsel and, taking into account the respective interests of the parties in the outcome of this

9

proceeding, the undersigned finds credible Aparicio's testimony that he requested on more than occasion that counsel file a direct appeal. The court rejects counsel's testimony that Aparicio agreed with his initial advice during the brief meeting that there were no issues to appeal. In fact, Aparicio's desire for an appeal is further corroborated by the fact that his wife, during the 10-day appeal period, again reminded counsel that Aparicio wanted to pursue an appeal. Counsel's testimony regarding whether Aparicio ever expressed a desire to proceed with the appeal was both equivocal and contradictory. Although counsel may have mistakenly believed that Aparicio waived his appellate rights based on the terms of the limited appeal waiver as contained in the negotiated plea agreement, the law is clear that Aparicio did not do so, and this court credits Aparicio's testimony that he always desired to pursue an appeal in order to challenge the lawfulness of his sentence.

In conclusion, the court finds that Aparicio requested a direct appeal, but that counsel refused and/or failed to do so. It is therefore recommended that this motion to vacate be granted, the same sentence reimposed, and that Aparicio be permitted to file a direct appeal, as dictated by the procedure set forth in United States v. Phillips, 225 F.3d 1198, 1200-01 (11 Cir. 2000). The law is clear that where counsel "acts contrary to his client's wishes or fails to fulfill his duty to attempt to determine his client's wishes," prejudice is presumed, and the defendant "is entitled to an out-of-time appeal, regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver." See Gomez-Diaz v. United States, 433 F.3d at 793; see also, Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); Roe v. Flores-Ortega, 528 U.S. at 483.

The remaining claims, however, should be dismissed without prejudice to the filing of a §2255 motion once Aparicio's conviction becomes final after resolution of his direct appeal. See McIver v. United States, 307 F.3d 1327, 1332, fn2 (11th Cir. 2002).[4] This is true because an order granting a §2255 petition, and reimposing the same sentence, "resets to zero the counter of collateral attacks pursued," and therefore "does not render subsequent collateral proceedings second or successive." McIver v. U.S., 307 F.3d 1327, 1332 (11th Cir. 2002)(citations omitted).

It is therefore recommended that: (1) this motion to vacate be granted solely as to the claim that counsel was ineffective for failing to prosecute a requested direct appeal; (2) that the same sentence be reimposed, (3) that the movant be permitted to file a

---

[4]In McIver, the Eleventh Circuit reasoned that dismissal was appropriate because:

> [T]here are significant inefficiencies to any other approach. If the district court were to deny a collateral claim under a different standard of review than applies on direct appeal, then the defendant might be entitled to relitigate the same claim in his reinstated direct appeal. Moreover, both the government and the petitioner could pursue collateral appellate proceedings on other claims that the outcome of the direct appeal might render unnecessary. Although in Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), we instructed district courts to resolve all claims in petitions brought pursuant to 28 U.S.C. § 2254, equally clear precedent of this Court directs that collateral claims should not be entertained while a direct appeal is pending. See Welsh v. United States, 404 F.2d 333 (5th Cir. 1968) (binding authority in the Eleventh Circuit under Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*)); see also Rules Governing 2255 Proceedings, Rule 5, advisory committee note; United States v. Cook, 997 F.2d 1312, 1319 (10th Cir. 1993); United States v. Gordon, 634 F.2d 638, 638-39 (1st Cir. 1980); United States v. Davis, 604 F.2d 474, 484 (7th Cir. 1979); Jack v. United States, 435 F.2d 317, 318 (9th Cir. 1970); Womack v. United States, 395 F.2d 630, 631 (D.C. Cir. 1968); Masters v. Eide, 353 F.2d 517 (8th Cir.1965). Once the court has determined that the petitioner is entitled to a direct appeal, such an appeal is "pending" for all relevant policy purposes. Id.

direct appeal, as dictated by the procedure set forth in <u>United States v. Phillips</u>, 225 F.3d 1198, 1200-01 (11 Cir. 2000); and (4) that the remaining claims raised herein be dismissed without prejudice to the movant to raise them in a subsequent §2255 motion once his conviction becomes final upon resolution of his reinstated direct appeal.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 11th date of May, 2009.

_____
UNITED STATES DISTRICT JUDGE

cc: Ruben Garcia, Esquire
    Attorney for Movant
    1209 S.E. 3rd Avenue
    Ft. Lauderdale, FL 33316
    Phone: 954/462-4600
    Fax: 954/462-0828
    (via fax and regular mail)

    Terry Lindsey, AUSA
    U.S. Attorney's Office
    500 East Broward Boulevard, 7th Floor
    Fort Lauderdale, FL 33394
    Phone: 954/356-7254
    Fax: 954/356-7336